UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LOUIS VUITTON MALLETIER | ) | |
| 19 East 57th Street | ) | |
| New York, New York 10022, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: |
| | ) | |
| vs. | ) | |
| | ) | |
| VARIOUS JOHN DOES NOS. 1-300, | ) | |
| and XYZ COMPANIES NOS. 1-20, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S MOTION FOR AN EX PARTE TEMPORARY RESTRAINING ORDER; SEIZURE AND IMPOUNDMENT ORDER; ORDER AND NOTICE SETTING PRELIMINARY INJUNCTION HEARING; ORDER PERMITTING EXPEDITED DISCOVERY; ORDER TO ISSUE JOHN DOE SUMMONS: AND ORDER SETTING BOND

Plaintiff  LOUIS VUITTON MALLETIER hereby moves for an ex parte temporary restraining order; seizure and impoundment order; order and notice setting preliminary injunction hearing; order permitting expedited discovery; order to issue John Doe summons; and order setting bond.

Plaintiff requests an ex parte temporary restraining order and seizure and impoundment order, without notice to Defendants, for the reasons set forth in plaintiff's Memorandum submitted in support of this motion.

WHEREFORE, premises considered, plaintiff respectfully requests that this Court grant its Motion For An Ex Parte Temporary Restraining Order; Seizure And Impoundment Order; Order And Notice Setting Preliminary Injunction Hearing; Order Permitting Expedited Discovery; Order

To Issue John Doe Summons; and Order Setting Bond in all respects and grant plaintiff such other and further relief to which it may be justly entitled.

Dated: February 2, 2007

Respectfully submitted,

/s/ Ivan J. Snyder
Stephen R. Smith
D.C. Bar No. 453719
Ivan J. Snyder
D.C. Bar No. 498461
POWELL GOLDSTEIN LLP
901 New York Avenue, N.W.
Third Floor
Washington, D.C. 20001
202-347-0066
202-624-7222 (Facsimile)

ATTORNEYS FOR PLAINTIFF
Louis Vuitton Malletier

OF COUNSEL:
Brian W. Brokate, Esquire
Angelo E. P. Mazza, Esquire
GIBNEY, ANTHONY & FLAHERTY
665 Fifth Avenue
New York, New York
212-688-5151
212-688-8315 (Facsimile)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LOUIS VUITTON MALLETIER | ) | |
| 19 East 57th Street | ) | |
| New York, New York 10022,, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: |
| | ) | |
| vs. | ) | |
| | ) | |
| VARIOUS JOHN DOES NOS. 1-300, | ) | |
| and XYZ COMPANIES NOS. 1-20, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTIONS
FOR A TEMPORARY RESTRAINING ORDER, SEIZURE ORDER,
PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY ORDER

POWELL GOLDSTEIN LLP
Stephen R. Smith
D.C. Bar No. 453719
Ivan J. Snyder
D.C. Bar No. 498461
901 New York Avenue, N.W.
Third Floor
Washington, D.C. 20001
202-347-0066
202-624-7222 (Facsimile)

OF COUNSEL:

GIBNEY, ANTHONY & FLAHERTY
Brian W. Brokate, Esquire
Angelo E. P. Mazza, Esquire
665 Fifth Avenue
New York, New York
212-688-5151
212-688-8315 (Facsimile)

ATTORNEYS FOR PLAINTIFF LOUIS VUITTON MALLETIER

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................iii

I.     FACTS..............................................................................................................................1

       A.     The Present Action................................................................................................1

       B.     Louis Vuitton Malletier ........................................................................................1

       C.     Defendants' Activities...........................................................................................1

       D.     Need For Immediate Relief, Seizure Of Infringing Merchandise, And Expedited Discovery
              ..............................................................................................................................2

II.    ARGUMENT......................................................................................................................3

       A.     General Requirements For Granting Of Interlocutory Relief....................................3

       B.     Plaintiff Is Likely To Succeed On The Merits At The Trial Of This Action.........................5

              1.     Plaintiff's Right To Relief Under The Trademark Act Of 1946 ............................6

                     a.     The Strength Of Plaintiff's Marks ............................................................6

                     b.     The Degree Of Similarity Between The Marks............................................6

                     c.     The Closeness Of The Products ..............................................................7

                     d.     Defendants' Purpose In Adopting Their Marks............................................7

              2.     Plaintiff's Right To Relief Under Common Law.......................................................7

              3.     Plaintiff's Right To Relief Under Section 43(a) Of The Trademark Act of 1946............8

       C.     Plaintiff Is Suffering And Will Continue To Suffer Irreparable Harm If Injunctive Relief Is
              Not Granted...........................................................................................................9

       D.     The Public Interest and The Balance of Equities Is Decidedly In Favor of Plaintiff...........10

       E.     The Need For A Temporary Restraining Order .........................................................11

       F.     Plaintiff's Motion For Seizure Order ......................................................................12

              1.     A Seizure Order Is The Only Relief Which Will Adequately Protect The Plaintiff's
                     Trademark Rights...........................................................................................14

              2.     Equitable Considerations Clearly Dictate The Issuance Of Seizure Order .................17

              3.     Plaintiff Has Satisfied The Procedural Requirements Set Forth In Section 1116(d)(4)(B)
                     ..............................................................................................................18

       G.     Plaintiff's Motion For Expedited Discovery.............................................................19

III.   CONCLUSION................................................................................................................20

TABLE OF AUTHORITIES

*Cases*

A.M.P. Inc. v. Foy, 540 F.2d, 1181  (4th Cir. 1976) ...............................................................11

A.T. Cross Co. v. Jonathan Bradley Pens, Inc., 470 F.2d 689 (2d Cir. 1972)...........................................7

American Ass'n for Advancement of Science v. Hearst Corp., 498 F. Supp. 244 (D.D.C. 1980).........6

American Home Products v. Johnson Chemical Co., 589 F.2d 103 (2d Cir. 1977)................................6

Apollo Distributing Co. v. Apollo Imports Inc., 341 F. Supp. 455 (S.D.N.Y. 1972) .......................8, 9

Armco Steel Corp. v. International Armament Corp., 249 F. Supp. 954 (D.D.C. 1966) .....................7

Bill Blass, Ltd. v. SAZ Corp., 751 F.2d 152 (3d Cir. 1984) ...................................................................3

Blue Bell, Inc. v. Maverick Sportswear, Inc., 184 U.S.P.Q. 77 (S.D.N.Y. 1974)....................................11

Cle-Ware Rayco, Inc. v. Perlstein, 401 F. Supp. 1231 (S.D.N.Y. 1975) ...................................................10

Colgate-Palmolive Co. v. North American Chemical Corp., 238 F. Supp. 81 (S.D.N.Y. 1964) .........11

Corning Glass Works v. Jeannette Glass Co., 308 F. Supp. 1321 (S.D.N.Y.), aff'd, 432 F.2d 784 (2d
     Cir. 1970) ...................................................................................................................................................3

Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.P.A. v. Helio Import/Export, Inc., 601 F. Supp. 1
     (S.D. Fla. 1983)........................................................................................................................................12

Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.P.A. v. Kitchen, 548 F.Supp. 248(S.D. Fla. 1982)
     .................................................................................................................................................2, 13, 20

Fuentes v. Shevin, 407 U.S. 67 (1972)........................................................................................................13

Fund of Funds, Ltd. v. First American Fund of Funds, Inc., 274 F. Supp. 517 (S.D.N.Y. 1967)....7, 8

George Washington Mint, Inc. v. Washington Mint, Inc., 349 F. Supp. 255 (S.D.N.Y 1972)............10

Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons, 523 F.2d 1331 (2d Cir. 1975)
     .....................................................................................................................................................................5

Helene Curtis Industries, Inc. v. Church & Dwight Co., 560 F.2d 1325 (7th Cir. 1977), cert. denied, 434
     U.S. 1070 (1978) ....................................................................................................................................18

In re Vuitton et Fils S.A., 606 F.2d 1 (2d Cir. 1979) ...............................................................12, 13, 18

Londontown Manufacturing Co. v. Cable Raincoat Co., 371 F. Supp. 1114 (S.D.N.Y. 1974)............7

Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538 (2d Cir. 1956) ...............................6

Miles Shoes, Inc. v. R.H. Macy & Co., 199 F.2d 602 (2d Cir. 1952) .........................................7

Miss Universe, Inc. v. Patricelli, 408 F.2d 506 (2d Cir. 1969) ..............................................5, 6

Montres Rolex, S.A. v. Snyder, 718 F.2d 524 (2d Cir. 1983) ............................................. 2, 15

Mortellito v. Nina of California, Inc., 335 F. Supp. 1288 (S.D.N.Y. 1972) ......................... 5, 7, 9

My-T Fine Corp. v. Samuels, 69 F.2d 76 (2d Cir. 1934) ...........................................................11

NAACP v. NAACP Legal Defense & Educational Fund, Inc., 559 F. Supp. 1337 (D.D.C. 1983),
    rev'd on other grounds, 753 F.2d 131 (D.C. Cir. 1985), cert. denied, 472 U.S. 1021 (1986)...........10

National Lampoon, Inc. v. American Broadcasting Cos., 376 F. Supp. 733  (S.D.N.Y.), aff'd, 497
    F.2d 1343 (2d Cir. 1974)....................................................................................................10

Omega Importing Corp. v. Petri-Kine Camera Co., 451 F.2d 1190 (2d Cir. 1971) ...................... 10, 18

P. Daussa Corp. v. Sutton Cosmetics (P.R.) Inc., 462 F.2d 134 (2d Cir. 1972) .......................................9

Polo Fashions, Inc. v. Extra Special Products, Inc., 451 F. Supp. 555 (S.D.N.Y. 1978).......................7

Polo Fashions, Inc. v. Ingoglia, et al., No. 82 3079 (JM) (E.D.N.Y. July 14, 1983)............................16

Polo Fashions, Inc. v. Stock Buyers, International, Inc., et al., No. C-2-82-76 (JPK) (S.D. Ohio
    Aug. 24, 1983) .................................................................................................................16

Power Test Petroleum Distributors, Inc. v. Calcu Gas, Inc., 754 F.2d 91 (2d Cir. 1985)...................10

Reddy Communications, Inc. v. Environmental Action Foundation, 477 F. Supp. 936 (D.D.C.
    1979)...............................................................................................................................6

Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495 (2d Cir. 1962) ......................................11

Scarves by Vera, Inc. v. Todo Imports Ltd. (Inc.), 544 F.2d 1167 (2d Cir. 1976) .................................3

Sears, Roebuck & Co. v. Sears Financial Network, 576 F. Supp. 857 (D.D.C. 1983).......................8, 9

United States ex rel. Vuitton et Fils S.A. v. Karen Bags, Inc., 592 F. Supp. 734 (S.D.N.Y. 1984),
    aff'd, 780 F.2d 179 (2d Cir. 1985), rev'd on other grounds, 481 U.S. 787 (1987)............................16

Washington Metro Area Transit Commission v. Holiday Tours, 559 F.2d 841 (D.C. Cir. 1977) ........3

Yale Electric Corp. v. Robertson, 26 F.2d 972 (2d Cir. 1928)................................................................8

*Statutes*

Trademark Act of 1946, 15 U.S.C. § 1051, <u>et seq.</u> ............................................................passim

**Other Authorities**

; 4A Moore, Moore's Federal Practice ¶ 30.54[2], at 30-67 (2d ed. 1984) ......................................23

130 Cong. Rec. H12080 (daily ed. October 10, 1984) ......................................................................17

130 Cong. Rec. H12081 (daily ed. October 10, 1984) ......................................................................22

130 Cong. Rec. H12082 (daily ed. October 10, 1984) ......................................................................23

U.S. International Trade Commission, Final Report on Investigation No. 332-158 Under Section
    332(b) of the Tariff Act of 1930 at 24 (1984) ........................................................................19

## I.   FACTS

A.     The Present Action

This is an action for trademark infringement in violation of the Trademark Laws of the United

States, 15 U.S.C. § 1051, et seq.; for common law unfair competition; and for statutory unfair

competition in violation of 15 U.S.C. § 1125(a). By this motion plaintiff Louis Vuitton Malletier ("Louis

Vuitton") seeks a Temporary Restraining Order, an Order permitting seizure of infringing and

counterfeit merchandise and of books and records relative thereto, a Preliminary Injunction and the right

to conduct expedited discovery.

B.     Louis Vuitton Malletier

Louis Vuitton Malletier is known throughout the world as a manufacturer of high quality

handbags, luggage, wallets and related products sold under the trademarks and tradenames "LOUIS

VUITTON", "LV" and the Pattern Design trademarks (hereinafter collectively referred to as the "Louis

Vuitton Trademarks").  At all times mentioned Louis Vuitton holds the exclusive rights and ownership

of certain trademarks and related logos, emblems, trade dress and symbols, including the Louis Vuitton

Trademarks, and several U.S. Trademark Registrations for the Louis Vuitton Trademarks.  At present,

Louis Vuitton's U.S. trademark registrations include, but are not limited to, the following:  Registration

No. 297,594 of September 20, 1932, Registration No. 1,045,932 of August 10, 1976, Registration No.

1,519,828 of January 10, 1989, Registration No. 2,263,903 of July 27, 1999 and Registration No. 2,421,618

of January 16, 2001  (hereinafter collectively referred to as the "Vuitton Registered Trademarks").

Photocopies of Vuitton's Registered Trademarks are attached hereto as Exhibit A.  Vuitton's Registered

Trademarks are in full force and effect and the trademarks and Vuitton's business goodwill, with which

the trademarks are associated, have never been abandoned.

C.     Defendants' Activities

Recently, plaintiff has become aware that defendants have been distributing clothing and accessories to which have been affixed counterfeits and infringements of plaintiff's trademarks. The moving Declarations submitted herewith establish that the counterfeit, infringing goods being offered by defendants are being sold by entities which are not under plaintiff's control. <u>See</u>, Exhibit A, Declaration of Ivan J. Snyder, Exhibit B, Declaration of Monica L. Cook and Exhibit C, Declaration of Jack Smalley. Moreover, the counterfeiting and infringing activities of defendants are causing irreparable harm to plaintiff's reputation and are defrauding the purchasing public.

D.    Need For Immediate Relief, Seizure Of Infringing Merchandise, And Expedited Discovery

Plaintiff's need for immediate relief is apparent. The counterfeiting problem has reached epidemic proportions, <u>Montres Rolex, S.A. v. Snyder</u>, 718 F.2d 524, 528 (2d Cir. 1983), with the extent of "this contagion being limited only by the outer bounds of the human imagination." <u>Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.P.A. v. Kitchen</u>, 548 F. Supp. 248, 250 (S.D. Fla. 1982) ("Fila"). Without such immediate relief, untold quantities of infringing merchandise will be purchased by the public under the misapprehension that these goods are authentic goods of the plaintiff. It is impossible to quantify the immense damage those sales will do to plaintiff's reputation.

It is imperative that, in addition to being able to promptly halt the distribution by defendants of such infringing goods, plaintiff be able to seize whatever quantity of such infringing merchandise are within defendants' custody or control, seize the records of defendants relative thereto, and have expedited discovery of defendants to determine, among other facts, the source and/or customers of the infringing merchandise being sold by defendants. Plaintiff will then be in a position to

promptly begin such proceedings as are necessary to halt the distribution of infringing merchandise through other sources.

## II.    ARGUMENT

A.    <u>General Requirements For Granting Of Interlocutory Relief</u>

Plaintiff is entitled to the requested preliminary injunction if it can demonstrate that it:

1)    is likely to prevail on the merits of its claims;

2)    will be irreparably injured if an injunction is not entered;

3)    shows that the defendants will not suffer substantial harm if interim injunctive relief is granted; and

4)    shows that the grant of injunctive relief is in the public interest.

<u>Washington Metro Area Transit Commission v. Holiday Tours</u>, 559 F.2d 841, 843 (D.C. Cir. 1977); <u>National Information Corp. v. Kiplinger Washington Editors, Inc.</u>, 771 F. Supp. 460, 462 (D.D.C. 1991).

In weighing the propriety of granting preliminary injunctive relief, the interests of the public in not being victimized and misled are considerable.  As stated by the Second Circuit in regard to a Trademark action in <u>Scarves by Vera, Inc. v. Todo Imports Ltd. (Inc.)</u>, 544 F.2d 1167, 1172 (2d Cir. 1976):

> The trademark laws protect three interests which are present here: first, the senior user's interest in being able to enter a related field at some future time; second, his interest in protecting the good reputation associated with his mark from the possibility of being tarnished by inferior merchandise of the junior user; and third, the public's interest in not being misled by confusingly similar marks - a factor which may weigh in the senior user's favor where the defendant has not developed the mark himself.

<u>See also</u> <u>Bill Blass, Ltd. v. SAZ Corp.</u>, 751 F.2d 152, 156 (3d Cir. 1984); <u>Corning Glass Works v. Jeannette Glass Co.</u>, 308 F. Supp. 1321, 1325 (S.D.N.Y.), <u>aff'd</u>, 432 F.2d 784 (2d Cir. 1970).

Here, it is manifestly clear that plaintiff is entitled to a preliminary injunction based upon each of the factors set forth in the cited precedents:

1.      Plaintiff probably (and, indeed, almost certainly) will succeed at the trial of this action, demonstrating that the use by defendants of copies of its trademarks and the trade names is an infringement of plaintiff's rights in and to their world-renowned trademarks.  Even if this Court believes that plaintiff has not presently established an unquestioned right to the ultimate relief it has requested (i.e., that there are sufficiently serious questions going to the merits which will ultimately require a trial of the action), the fact of defendants' blatant infringement, and the equities which are so clearly in favor of plaintiff, demonstrate the strong likelihood of plaintiff's ultimate success and plainly require the granting of a preliminary injunction pending completion of this action.

2.      Plaintiff will be harmed irreparably if immediate injunctive relief is not granted since defendants are using infringements of plaintiff's trademarks in conjunction with the sale of merchandise, the sale of which takes control of plaintiff's valued reputation away from plaintiff and tends to irreparably damage plaintiff's standing in the marketplace.

3.      The balance of equities is totally in favor of plaintiff when its many years of use and millions of dollars of sales throughout the United States are compared with the short period of use of identical marks by defendants, which use obviously was utilized to unfairly and fraudulently trade upon the vast goodwill and substantial value of the Vuitton Trademarks.

4.      The public interest in preventing confusion or deception of purchasers as to the source, origin or sponsorship of the wide variety of high quality goods offered under trademarks must be given considerable weight by this Court and should resolve any doubts in favor of granting a preliminary injunction.

Plaintiff not only submits that it is entitled to a preliminary injunction, but also respectfully submits that it is entitled to the requested Temporary Restraining Order, since defendants may have substantial quantities of infringing merchandise in their possession for sale and distribution.  Plaintiff will suffer immediate and irreparable injury, loss and damage if defendants are not immediately prevented from doing business in such merchandise, or disposing of the same or their books and records relative thereto.  Furthermore, it is believed that any delay in securing such relief and tallying such infringing merchandise may permit defendants to transfer their inventory to other infringers, as occurs so often in actions concerning infringement of well-known "designer" marks.

      B.      <u>Plaintiff Is Likely To Succeed On The Merits At The Trial Of This Action</u>

Plaintiff has long and extensively used its trademarks on clothing and related articles.  As previously detailed, plaintiff is the owner of several U.S. Trademark Registrations for its marks.  By contrast, defendants, upon information and belief, have begun their use in commerce of the infringing trademarks and trade names of plaintiff very recently.

It is a fundamental principle of trademark law that the first person to use a trademark in conjunction with goods has the right to prevent others from subsequently adopting a confusingly similar mark on such goods. <u>Miss Universe, Inc. v. Patricelli</u>, 408 F.2d 506 (2d Cir. 1969); <u>Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons</u>, 523 F.2d 1331 (2d Cir. 1975); <u>Mortellito v. Nina of California, Inc.</u>, 335 F. Supp. 1288 (S.D.N.Y. 1972).  Accordingly, plaintiff is entitled to preliminary injunctive relief under any one of three separate legal doctrines:

1.    Plaintiff's Right To Relief Under The Trademark Act Of 1946

Plaintiff is the owner of several U.S. Trademark Registrations for its trademarks. Under the

Trademark Act of 1946 (15 U.S.C. § 1051 et seq.), federal registration gives plaintiff powerful statutory

rights. Reddy Communications, Inc. v. Environmental Action Foundation, 477 F. Supp. 936 (D.D.C.

1979. For example, Section 7(b) of the Act (15 U.S.C. § 1057(b)) provides, in pertinent part:

> A certificate of registration of a mark upon the principal register
> provided by this Act shall be prima facie evidence of the validity of
> the registration, registrant's ownership of the mark, and of
> registrant's exclusive right to use the mark in commerce in
> connection with the goods . . . specified in the certificate, subject to
> any conditions and limitations stated therein.

A federally registered trademark is therefore afforded a strong presumption of validity. Miss

Universe, 408 F.2d 506; Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538, 542 (2d

Cir. 1956).

The test of infringement includes analysis of several factors including the strength of the

plaintiff's marks, the degree of similarity between the goods and the infringer's purpose in adopting its

mark. American Ass'n for Advancement of Science v. Hearst Corp., 498 F. Supp. 244, 254 (D.D.C.

1980); Miss Universe, 408 F.2d 506. Analysis of these factors indicates indisputably that the plaintiff's

trademarks have been intentionally infringed by defendants.

a.    The Strength Of Plaintiff's Marks

As reflected in the Declaration of Ivan J. Snyder, (Exhibit A) plaintiff's trademarks are

well-known throughout the world. The fact that the trademarks of plaintiff are the subject of federal

trademark registrations, in addition to creating a strong presumption of validity, stands as further proof

of the strength of the marks. American Home Products v. Johnson Chemical Co., 589 F.2d 103, 106 (2d

Cir. 1977).

b.    The Degree Of Similarity Between The Marks

6

Defendants have chosen, out of the wealth of marks available, marks virtually identical to those of the plaintiff. There is clearly no defense available to defendants regarding their choice of marks and the possibility of non-similarity. It has often been held that the law does not look with favor on the businessman who, out of the vast variety of marks available, chooses as a trademark one which comes as close as he dares to a well-known mark on the identical product. A.T. Cross Co. v. Jonathan Bradley Pens, Inc., 470 F.2d 689 (2d Cir. 1972).

c.    The Closeness Of The Products

Defendants use their marks on products that are identical in kind but not in quality to those of plaintiff.

d.    Defendants' Purpose In Adopting Their Marks

The trademarks of the plaintiff are world-famous. That defendants have chosen marks that are virtually identical to such strong marks demonstrates conclusively defendants' desire and purpose to trade upon plaintiff's goodwill. Fund of Funds, Ltd. v. First American Fund of Funds, Inc., 274 F. Supp. 517, 527 (S.D.N.Y. 1967); Miles Shoes, Inc. v. R.H. Macy & Co., 199 F.2d 602, 603 (2d Cir. 1952); Londontown Manufacturing Co. v. Cable Raincoat Co., 371 F. Supp. 1114 (S.D.N.Y. 1974). Cf. National Information Corp. v. Kiplinger Washington Editors, Inc., 771 F. Supp. at 468.

2.    Plaintiff's Right To Relief Under Common Law

Plaintiff will also prevail under the common law of unfair competition. See Armco Steel Corp. v. International Armament Corp., 249 F. Supp. 954 (D.D.C. 1966); Polo Fashions, Inc. v. Extra Special Products, Inc., 451 F. Supp. 555, 563 (S.D.N.Y. 1978); Mortellito v. Nina of California, Inc., 335 F. Supp. at 1295. Defendants have infringed plaintiff's famous trademarks in an obvious attempt to establish an association or connection between their goods and business and the business of plaintiff. Such acts constitute palming off, deception of the purchaser and misappropriation of the property rights of

plaintiff. All of these blatant acts are actionable under the common law of unfair competition and entitle plaintiff to immediate injunctive relief. Sears, Roebuck & Co. v. Sears Financial Network, 576 F. Supp. 857 (D.D.C. 1983); Fund of Funds, Ltd. v. First American Fund of Funds, Inc., 274 F. Supp. at 524.

In Apollo Distributing Co. v. Apollo Imports Inc., 341 F. Supp. 455 (S.D.N.Y. 1972), for example, the court upheld the protection of a long-established trademark and trade name under both Section 43(a) of the Trademark Act and the general law of unfair competition. In granting summary judgment, Judge Weinfeld stated, as to the claim of unfair competition (at 459):

> Defendants' selection of a name long used by plaintiff, which name had become identified in the public mind with products distributed by plaintiff, strongly suggests and warrants a finding of defendants' deliberate purpose to capitalize on the good will plaintiff had built up over the years [footnote omitted]. To permit defendants' continued use of 'Apollo' would unfairly give it the benefit of plaintiff's well-established reputation and of its extensive and costly advertising campaign over the years.

As Judge Learned Hand explained in Yale Electric Corp. v. Robertson, 26 F.2d 972, 974 (2d Cir. 1928):

> . . . If another uses [one's trademark], he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury . . . . [U]nless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful.
>
> This is a case of unlawful use of another's name and reputation, and plaintiff is entitled to relief.

The oft-quoted summary of the law by the late Judge Learned Hand in Yale Electric Corp. v. Robertson, supra, which has survived the test of time, is directly applicable to the present facts. This Court should not permit defendants to trade upon plaintiff's reputation, which is symbolized by the trademarks of plaintiff, and to tarnish such reputation by the substitution of their own goods.

      3.    Plaintiff's Right To Relief Under Section 43(a) Of The Trademark Act Of 1946

Section 43(a) of the Trademark Act of 1946 (15 U.S.C. § 1125(a)) provides, in pertinent part, that:

> Any person who shall affix, apply or annex, or use in connection
> with any goods or services, . . . a false designation of origin, or any
> false description or representation, including words or other symbols
> tending falsely to describe or represent the same, and shall cause
> such goods or services to enter into commerce . . . shall be liable to a
> civil action  . . . by any person who believes that he is or is likely to
> be damaged by the use of such false description or representation.

Defendants' use of the trademarks of plaintiff is a false description or representation of the source of origin of goods in violation of this Statute and is a separate basis for granting a preliminary injunction. Sears, Roebuck & Co., 576 F. Supp. at 861; Mortellito v. Nina of California, Inc., 335 F. Supp. at 1294; Apollo Distributing Co. v. Apollo Imports Inc., 341 F. Supp. at 458. The plaintiff's trademarks are designations of origin that fit precisely within the statutory definition. Confusion must follow if defendants are permitted to use their infringing trademarks, especially on goods that are identical in kind to those of Vuitton.  Even if Vuitton were affirmatively required to establish secondary meaning in its marks, then the Declarations submitted in support of this Motion establish that the Vuitton trademarks have long served as the identifier of a single source of goods.

C.     Plaintiff Is Suffering And Will Continue To Suffer Irreparable Harm If Injunctive Relief Is Not Granted

In trademark cases, confusing similarity between marks is in itself sufficient injury to warrant the issuance of a preliminary injunction. Sears, Roebuck & Co., 576 F. Supp. at 861-63; P. Daussa Corp. v. Sutton Cosmetics (P.R.) Inc., 462 F.2d 134, 136 (2d Cir. 1972).  Where there is a high probability of confusion, irreparable injury almost inevitably follows.  Omega Importing Corp. v. Petri-Kine Camera Co., 451 F.2d 1190, 1195 (2d Cir. 1971).

Where the marks are virtually identical and are used in conjunction with the same goods that are sold to the same purchasers, proof of actual confusion is not necessary.  NAACP v. NAACP Legal Defense & Educational Fund, Inc., 559 F. Supp. 1337 (D.D.C. 1983), rev'd on other grounds, 753 F.2d 131 (D.C. Cir. 1985), cert. denied, 472 U.S. 1021 (1986).  In George Washington Mint, Inc. v.

Washington Mint, Inc., 349 F. Supp. 255, 262 (S.D.N.Y 1972), for example, the court considered the

marks "The Geo. Washington Mint" and "The Washington Mint" and held:

> While there has been no proof of actual confusion yet, the very
> reading of the two trademarks makes it obvious that there is a strong
> likelihood of confusion of origin (at least in commemorative silver
> plates) and proof of actual confusion is not necessary . . . where the
> products are the same and the class of customers relatively the
> same . . . .   The plaintiff is not required to prove palming off.
> (Citations omitted.)

It is equally well established that the consequences of trademark infringement and unfair

competition, and the attendant loss of goodwill and reputation, are intangibles that cannot later be

compensated adequately by an award of money damages.  National Lampoon, Inc. v. American

Broadcasting Cos., 376 F. Supp. 733, 750 (S.D.N.Y.), aff'd, 497 F.2d 1343 (2d Cir. 1974); Cle-Ware

Rayco, Inc. v. Perlstein, 401 F. Supp. 1231, 1234 (S.D.N.Y. 1975).

The moving Declarations establish that plaintiff is also being irreparably harmed and damaged.

Plaintiff's loss of exclusivity in the use of its trademarks has taken plaintiff's reputation out of its control.

George Washington Mint, Inc. v. Washington Mint, Inc., 349 F. Supp. at 263; see also Power Test

Petroleum Distributors, Inc. v. Calcu Gas, Inc., 754 F.2d 91, 95 (2d Cir. 1985).

      D.      The Public Interest and The Balance of Equities Is Decidedly In Favor of Plaintiff

Defendants' use of their infringing trademarks in conjunction with goods identical in kind to

those sold by plaintiff disserves the public interest and, when balanced against plaintiff's substantial

efforts over the years to build up and maintain its enviable reputation and goodwill under its trademarks,

unquestionably tips the equities in favor of plaintiff.

It is inconceivable that the public interest could be served by permitting Defendants to continue

to sell counterfeit clothing and accessories under trademarks likely to confuse the public as to whether

the apparel is authorized or sponsored by plaintiff.  To the contrary, the purchasing public has a right not

to be deceived or confused as to the source or origin of goods.  That is the very purpose of a trademark, and that purpose clearly is frustrated when a trademark is infringed.  See, e.g., A.M.P. Inc. v. Foy, 540 F.2d, 1181, 1185 n.8, 1187 (4th Cir. 1976).  Thus, the public interest would plainly be served by the issuance of an injunction.

There is a serious doubt that this Court should even consider any alleged commercial interests that defendants may assert, inasmuch as defendants are deliberately plagiarizing and trading upon plaintiff's goodwill.  See, e.g., My-T Fine Corp. v. Samuels, 69 F.2d 76, 78 (2d Cir. 1934); Colgate-Palmolive Co. v. North American Chemical Corp., 238 F. Supp. 81, 87 (S.D.N.Y. 1964).  However, even if such interests are weighed, this Court should give greater consideration to the fact that defendants are believed to have been distributing the infringing merchandise for only a short time and that the property rights which defendants seek to blatantly appropriate are the result of many years of significant effort by and expense to plaintiff.  Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495 (2d Cir. 1962); Blue Bell, Inc. v. Maverick Sportswear, Inc., 184 U.S.P.Q. 77 (S.D.N.Y. 1974) (not otherwise reported).

E.    The Need For A Temporary Restraining Order

In the present case, plaintiff has requested, *inter alia*, that this Court grant a temporary restraining order without notice, pending the hearing on the preliminary injunction to maintain the status quo.  In view of the virtual identity between plaintiff's trademarks and the marks used by defendants, and the identical nature of the goods of plaintiff and goods of defendants, if defendants are allowed to continue to sell or otherwise dispose of the infringing goods in their possession, irreparable harm and damage to plaintiff will continue.

As the Second Circuit stated when it granted an ex parte temporary restraining order in In re Vuitton et Fils S.A., 606 F.2d 1, 4 (2d Cir. 1979):

> In a trademark infringement case such as this, a substantial likelihood of confusion constitutes, in and of itself, irreparable injury sufficient to satisfy the requirements of Rule 65(b)(1).  (Citations omitted.)

the Vuitton court further held that:

> If notice is required, that notice all too often appears to serve only to render fruitless further prosecution of the action.  This is precisely contrary to the normal and intended role of "notice," and it is surely not what the authors of the rule either anticipated or intended.

Id. at 5.  See also Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.P.A. v. Helio Import/Export, Inc., 601 F. Supp. 1 (S.D. Fla. 1983) (granting ex parte temporary restraining order where disappearance of counterfeit goods and records was possible if notice of proceeding were to be given).

Here, as in Vuitton, defendants are selling bogus merchandise -- in this case counterfeit clothing and accessories all bearing plaintiff's trademark.  As in Vuitton, it has been plaintiff's experience that the only effective way to stop the transfer of goods and destruction of property is by an ex parte temporary restraining order along with a seizure as discussed hereinafter.  (See Declarations in support of this order submitted herewith.)  Under these circumstances, an ex parte temporary restraining order without notice is appropriate and necessary to fully protect plaintiff from further harm and to ensure that defendants do not remove their counterfeit goods or destroy their records.

    F.      Plaintiff's Motion For Seizure Order

Congress has enacted the Trademark Counterfeiting Act of 1984 (the "Counterfeiting Act") which, inter alia, authorizes this Court to issue ex parte orders directing the seizure and sequestration of infringing merchandise and documents relating to this merchandise.  The Counterfeiting Act effectively codifies prior judicial practice.  Prior to the enactment of this legislation, the courts, relying upon In re Vuitton et Fils S.A., 606 F.2d 1 (2d Cir. 1979), 15 U.S.C. § 1118 and the All Writs Act (28 U.S.C. § 1651) and recognizing that "'dumping' of counterfeit goods or transfer of counterfeit goods to unknown third parties, is a common practice in the counterfeiting industry," Fila, 548 F. Supp. at 250, have as a matter of

course granted trademark owners ex parte seizure orders to preclude infringers from concealing their counterfeit wares and business records.

With the Counterfeiting Act, Congress recognized that, absent such ex parte relief, willful counterfeiters could invariably avoid an equitable reckoning with trademark owners by concealing their bogus wares and any records documenting their unlawful business transactions.[1]  As the Explanatory Statement to the Counterfeiting Act noted:

> The purpose of the ex parte seizure provision is to provide victims of trademark counterfeiting with a means of ensuring that the courts are able to exercise their jurisdiction effectively in counterfeiting cases.  Testimony before both the House and Senate Judiciary Committees established that many of those who deal in counterfeits make it a practice to destroy or transfer counterfeit merchandise when a day in court is on the horizon.  The ex parte seizure procedure is intended to thwart this bad faith tactic, while ensuring ample procedural protections for persons against whom such orders are issued.  In essence, both the Senate and House bills permitted issuance of an ex parte seizure order if the applicant could show that the defendants would not comply with a lesser court order, such as a temporary restraining order, and that there was no means of protecting the court's authority other than to seize the property in question on an ex parte basis.

130 Cong. Rec. H12080 (daily ed. October 10, 1984).

The Counterfeiting Act imposes certain conditions upon the issuance of an ex parte seizure order.  Prior to issuing such an order, this Court is required to find:

(i)     an order other than an ex parte seizure order is not adequate to achieve the purposes of section 32 of [the Lanham Act] (15 U.S.C. § 1114);

(ii)    the applicant has not publicized the requested seizure;

---

[1] While notice has traditionally been considered an element of procedural due process, Fuentes v. Shevin, 407 U.S. 67 (1972), the Supreme Court of the United States has recognized that "there may be cases in which [plaintiff] could make a showing of immediate danger that [defendants] will destroy or conceal disputed goods." Id. at 93.

(iii)   the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services;

(iv)   an immediate and irreparable injury will occur if such seizure is not ordered;

(v)    application;

(vi)   the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application; and

(vii)  the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person.

15 U.S.C. § 1116(d)(4)(B).

These requirements may be logically separated into three areas of analysis. The first and seventh requirements entail considerations of the comparative necessity for the issuance of an ex parte seizure order. In essence, the Court is required to determine whether an ex parte seizure order is the most appropriate vehicle for insuring the preservation of evidence of defendants' counterfeiting activities. The considerations outlined in subparagraphs three, four and six require this Court to determine whether equity favors the issuance of the ex parte seizure order. These standard equitable considerations serve as the predicate for any form of preliminary equitable relief, including preliminary injunctive orders. The second and fifth requirements serve to further protect defendants' procedural rights.

An analysis of these statutory predicates reveals that plaintiff is clearly entitled to an ex parte seizure order.

1.    A Seizure Order Is The Only Relief Which Will Adequately Protect The Plaintiff's Trademark Rights

Over the past several years, this country has witnessed the counterfeiting problem grow to epidemic proportions. Montres Rolex v. Snyder, 718 F.2d 524 (2d Cir. 1983). Notwithstanding the

14

hundreds of lawsuits instituted on behalf of Vuitton and other trademark owners, counterfeiters continue to surreptitiously churn out their inferior wares. Like parasites, the counterfeiters are sustained by the trademark owner's reputation for the manufacture of high quality merchandise, while eroding consumer confidence in genuine merchandise. Unable to distinguish between the counterfeit and genuine merchandise, the consuming public attributes defects in the bogus merchandise to the trademark owner. Moreover, the counterfeiters' illicit operations deprive trademark owners of billions of dollars in profit. The International Trade Commission has estimated that trademark owners lose upwards of Six Billion Dollars ($6,000,000,000) annually in domestic and foreign trade to counterfeiters. U.S. International Trade Commission, <u>Final Report on Investigation No. 332-158 Under Section 332(b) of the Tariff Act of 1930</u>, at 24 (1984).

While willful trademark infringement did not constitute a federal crime prior to the enactment of the Counterfeiting Act, counterfeiters had long previously developed a distinct criminal mentality. For example, manufacturers and distributors of counterfeit merchandise engage in a plethora of subterfuges that serve to conceal their identities and their operations. This evolving mentality has not escaped judicial notice. As one court observed, "[t]he agility and resourcefulness of wholesale and retail purveyors of counterfeit trademarked goods is at one with the business acumen of cocaine dealers, as is demonstrated in [Louis] Vuitton's [S.A.] previous attempts by litigation to quell distribution of cheap bogus merchandise which dilutes its valued mark." <u>United States ex rel. Vuitton et Fils S.A. v. Karen Bags, Inc.</u>, 592 F. Supp. 734, 743 n.4 (S.D.N.Y. 1984), <u>aff'd</u>, 780 F.2d 179 (2d Cir. 1985), <u>rev'd on other grounds</u>, 481 U.S. 787 (1987).

As set forth in greater detail in Exhibit A, Declaration of Ivan J. Snyder submitted in support of this Motion, experience has taught that once a counterfeiter realizes that he is about to be apprehended, he invariably will conceal or destroy any relevant business records and transfer his inventory to another

counterfeiter for safekeeping.  Restraining orders have proven largely ineffectual.  Lured by the prospect of substantial cash profits, counterfeiters have evinced little, if any, respect for court orders.  Indeed, over the past few years, trademark counsel have instituted a number of criminal contempt proceedings in an effort to dissuade the community of counterfeiters from violating orders issued by federal courts throughout the United States.  See, e.g., Polo Fashions, Inc. v. Ingoglia, et al., No. 82 3079 (JM) (E.D.N.Y. July 14, 1983); Polo Fashions, Inc. v. Stock Buyers, International, Inc., et al., No. C-2-82-76 (JPK) (S.D. Ohio Aug. 24, 1983).

The defendants in this action similarly can be expected to divest themselves of their inventory of counterfeit merchandise and any relevant business records absent the issuance of a seizure order without notice.  Their activities, as detailed in the accompanying Declaration of Monica Cook, (Exhibit B), strongly suggest that they are cut from the same mold as the counterfeiters apprehended previously by plaintiff.  Confronted with the loss of their inventory and a substantial adverse judgment predicated upon the information contained in their business records, only the naive would expect them to produce voluntarily their contraband merchandise and any business records documenting their illegal enterprise.

The Counterfeiting Act surely serves to underscore these conclusions.  By imposing substantial criminal sanctions for the intentional distribution of counterfeit merchandise, Congress has effectively increased the likelihood that counterfeiters, like cocaine distributors, will attempt to conceal all evidence of their illegal activities.

In sum, the evidence offered by plaintiff in support of this application clearly demonstrates that a seizure order without notice to defendants is the only means of insuring that additional evidence of defendants' counterfeiting activities will be procured and preserved.

    2.       Equitable Considerations Clearly Dictate The Issuance Of Seizure Order

The equitable considerations applicable here parallel those discussed in Section II.D of this Memorandum in conjunction with plaintiff's request for a preliminary injunction. These considerations do not require further extended analysis.

Section 1116(d)(4)(B)(iii) merely requires that plaintiff demonstrate that it is likely to prove that defendants "used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services." The supporting Declarations amply demonstrate that plaintiff's trademarks have been registered in the United States Patent and Trademark Office, and that defendants are distributing counterfeit merchandise of plaintiff.

Section 1116(d)(4)(B)(iv) requires that plaintiff demonstrate that "immediate and irreparable injury will occur" if the seizure application is denied. Plaintiff will clearly incur immediate and irreparable injury absent the issuance of a seizure order without notice since (a) the distribution of infringing merchandise has been held consistently to constitute irreparable injury, In re Vuitton et Fils, S.A., 606 F.2d at 4, and (b) defendants will surely dispose of this merchandise if they are afforded notice of this action.

As the Explanatory Statement to the Counterfeiting Act observed with respect to this requirement:

> The fourth required finding, derived from both the Senate and House bills, is that an 'immediate and irreparable injury' will occur if a seizure is not ordered. This will not ordinarily be a difficult showing in a counterfeiting case. If the mark in question is likely to be found to be counterfeit, then the applicant will ordinarily be able to show irreparable harm that the goods are likely to be distributed if their seizure is not ordered. The courts have repeatedly held that the distribution of infringing goods constitutes irreparable injury sufficient to order preliminary relief. See, e.g., In re Vuitton et Fils S.A., 606 F.2d 1, 4 (2d Cir. 1979); Helene Curtis Industries, Inc. v. Church & Dwight Co., 560 F.2d 1325, 1332-33 (7th Cir. 1977), cert. denied, 434 U.S. 1070 (1978); Omega Importing v. Petri-Kine Camera Co., 451 F.2d 1190 (2d Cir. 1971). Since the marks at issue here are not

> merely infringing but counterfeit marks, this conclusion will be still more
> easily reached.

130 Cong. Rec. H12081 (daily ed. October 10, 1984).

Finally, 15 U.S.C. § 1116(d)(4)(B)(vi) requires that this Court find that plaintiff's equitable

interests are more substantial than those of defendants.  Since defendants are trafficking in counterfeit

merchandise of the plaintiff, plaintiff's interest in removing this bogus merchandise from the marketplace

clearly dictates the issuance of the requested seizure order.

As the Explanatory Statement to the Counterfeiting Act concluded:

> In cases in which the other listed requirements are satisfied, the sponsors
> do not anticipate that this showing will be a difficult one.  The hardship
> to a plaintiff caused by the distribution of goods bearing counterfeit
> marks will usually be great; a defendant's legitimate interest in retaining
> counterfeits, which he or she would hide or destroy if notified of the
> suit, will normally be minimal.

130 Cong. Rec. H12081 (daily ed. October 10, 1984).

Accordingly, the equitable considerations outlined in Section 1116(d)(4)(B) mandate the issuance

of an <u>ex parte</u> seizure order.[2]

3.     Plaintiff Has Satisfied The Procedural Requirements Set Forth In Section
       1116(d)(4)(B)

Section 1116(d)(4)(B)(ii) requires that this Court find, prior to issuing a seizure order, that

plaintiff has not publicized the requested seizure.  As attested to in the accompanying Declaration of

Ivan J. Snyder, plaintiff's counsel, plaintiff has not publicized this application.  <u>See,</u> Exhibit A.  Indeed,

the effective execution of such a seizure order is, by definition, contingent upon the element of surprise.

---

[2]  While the Counterfeiting Act provides for the execution of the <u>ex parte</u> seizure order by "a United States Marshal or other
law enforcement officer" (15 U.S.C. § 1116(d)(9)), analysis of the legislative history reveals that Congress anticipated that due
to the inability of the marshals to identify counterfeit merchandise, it would be "desirable for the court to permit a
representative of the applicant, such as its counsel, to accompany the U.S. Marshal to assist in making these determinations."
130 Cong. Rec. H12082 (daily ed. October 10, 1984).

Therefore, the publication of such an application may be considered anathema since it would defeat plaintiff's objective -- the retrieval and maintenance of evidence of defendants' counterfeiting activities.

In addition, plaintiff has demonstrated that "the matter to be seized will be located at the place identified in the application." 15 U.S.C. § 1116(d)(4)(B)(v). Exhibit B, Declaration of Monica L. Cook, plaintiff's investigator, identifies the location from which defendants have been offering for sale and selling counterfeit merchandise.

      G.    <u>Plaintiff's Motion For Expedited Discovery</u>

Section 15 U.S.C. § 1116(d)(10)(B) provides for expedited pretrial discovery. Rule 30(a), Fed.R.Civ.P., provides for the granting of leave to a plaintiff to take depositions prior to the expiration of thirty (30) days after the service of the Summons and Complaint. Rule 34(b) provides that the Court may require defendants to produce documents pursuant to a Rule 34 request in less time than the normal forty five (45) day period after service of the Summons and Complaint.

Expedited discovery under 15 U.S.C. § 1116(d)(10)(B) and Rules 30(a) and 34(b) should be granted where the Court finds that it is warranted by the special circumstances of a particular case. A compelling reason for permitting early discovery is the prejudice to plaintiff that would result from postponing discovery. <u>Fila</u>, 548 F. Supp. at 250; 4A Moore, <u>Moore's Federal Practice</u> ¶ 30.54[2], at 30-67 (2d ed. 1984).

In a case such as this, where it is probable that the defendants do not manufacture the infringing goods, the harm to plaintiff can continue even after the defendants are enjoined. Plaintiff requires expedited discovery so that the supplier of this infringing merchandise can be located. Further, the quantity of infringing merchandise purchased, as well as the quantity of such merchandise sold, and to whom, must be determined promptly.

III.   CONCLUSION

19

It is respectfully submitted that plaintiff has set forth and amply demonstrated numerous independent grounds upon which the Temporary Restraining Order and Preliminary Injunction should be issued by this Court. Further, plaintiff's request for a seizure order is also clearly warranted. Clearly, the totality of defendants' wrongful conduct should justify the issuance of such orders to prevent further irreparable harm and damage to plaintiff's reputation.

In light of the foregoing, we earnestly solicit the Court to enter orders granting plaintiff's requests.

Dated: February 2, 2007

Respectfully submitted,

/s/ Ivan J. Snyder
Stephen R. Smith
D.C. Bar No. 453719
Ivan J. Snyder
D.C. Bar No. 498461
POWELL GOLDSTEIN LLP
901 New York Avenue, N.W.
Third Floor
Washington, D.C. 20001
202-347-0066
202-624-7222 (Facsimile)

ATTORNEYS FOR PLAINTIFF
Louis Vuitton Malletier

OF COUNSEL:
Brian W. Brokate, Esquire
Angelo E. P. Mazza, Esquire
GIBNEY, ANTHONY & FLAHERTY
665 Fifth Avenue
New York, New York
212-688-5151
212-688-8315 (Facsimile)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

LOUIS VUITTON MALLETIER                    )
19 East 57th Street                        )
New York, New York 10022,,                 )
                                           )
              Plaintiff,                    )     Case No.:
       vs.                                 )
                                           )
VARIOUS JOHN DOES NOS. 1-300,              )
and XYZ COMPANIES NOS. 1-20,               )
                                           )
              Defendants.                   )
_____)

TEMPORARY RESTRAINING ORDER, SEIZURE ORDER,
EXPEDITED DISCOVERY ORDER AND ORDER TO SHOW CAUSE
BRINGING ON MOTION FOR PRELIMINARY INJUNCTION

Upon the Complaint herein and the exhibits annexed thereto, upon the moving declarations, and the

Memorandum submitted in support of this Motion, it is hereby:

ORDERED that defendants show cause before this Court at Courtroom _____, United States

Courthouse, 3rd Street and Constitution Avenue, N.W., Washington, D.C., on the _____ day of

_____, 2007 at _____ o'clock _____, or as soon thereafter as counsel can be heard, why a

preliminary injunction, pursuant to Rule 65, Fed. R. Civ. P., should not be issued enjoining defendants, their

agents, servants, employees, officers, and all persons in active concert and participation with them, pending

the final hearing and determination of this action:

      (1)     From using plaintiff Louis Vuitton Malletier's "LV", "LOUIS VUITTON", and

Pattern Design trademarks as shown on U.S. Trademark Registrations, including but not limited

to:  Registration No. 297,594 of September 20, 1932, Registration No. 1,045,932 of August 10,

1976, Registration No. 1,519,828 of January 10, 1989, Registration No. 2,263,903 of July 27, 1999

and Registration No. 2,421,618 of January 16, 2001 (hereinafter "Plaintiff's Registered

1

Trademarks").

(2)    From possessing, receiving, manufacturing, distributing, advertising, promoting, returning, offering for sale or otherwise disposing of in any manner, holding for sale or selling any goods, labels, tags, logos, decals, emblems, signs, and other forms of markings, any packaging, wrappers, pouches, containers and receptacles, and any catalogs, price lists, promotional materials and the like bearing a copy or colorable imitation of plaintiff's trademarks;

(3)    From using any logo, trade name, or trademark which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of defendants are sponsored by, authorized by, or in any way associated with the plaintiff;

(4)    From infringing Plaintiff's Registered Trademarks;

(5)    From otherwise unfairly competing with plaintiff;

(6)    From falsely representing themselves as being connected with plaintiff or sponsored by or associated with plaintiff;

(7)    From using any reproduction, counterfeit, copy, or colorable imitation of the trademarks of plaintiff in connection with the publicity, promotion, sale, or advertising of goods sold by defendants including, without limitation, clothing or related products bearing a copy or colorable imitation of plaintiff's trademarks;

(8)    From affixing, applying, annexing, or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent such goods as being those of plaintiff and from offering such goods in commerce;

(9)    From using any trademark or trade name in connection with the sale of any goods which may be calculated to falsely represent such goods as being connected with, approved by or sponsored by plaintiff; and

(10)     From destroying, altering, disposing of, concealing, tampering with or in any manner secreting any and all business records, invoices, correspondence, books of account, receipts or other documentation relating or referring in any manner to the manufacture, advertising, receiving, acquisition, importation, purchase, sale or offer for sale, or distribution of any merchandise bearing the Plaintiff's Registered Trademarks; and it is further

ORDERED that pending the hearing of plaintiff's motion to confirm the seizure authorized herein, the Clerk of this Court is to keep and maintain under seal all papers filed herein, and that public scrutiny of such papers shall not be permitted, subject to defendants' right to access such papers upon presenting the Clerk of this Court with proper identification after the seizure authorized herein has been carried out; and it is further

ORDERED that pending the hearing and determination of plaintiff's motion for preliminary injunction, defendants, their agents, servants, employees, officers, and all other persons in active concert or participation with them, be and hereby are, without prior written or oral notice, temporarily restrained and enjoined from in any manner, either directly or indirectly, committing any of the acts set forth above which are sought to be enjoined by plaintiff; and it is further

ORDERED that the United States Marshal for this District, or one or more of his deputies, if readily available, or a local law enforcement officer having jurisdiction, or, if it is impractical to obtain assistance from the U.S. Marshal, his deputies or local law enforcement, one or more of the employees and agents of the Tontine Group licensed and bonded private investigative agency experienced in the civil seizure of counterfeit products, assisted by one or more attorneys or agents of the plaintiff, is directed to search, seize and sequester the following in the possession, custody or control of defendants, including on their person or in any vehicles in the possession, custody, or control of defendants at various vending stands and locations throughout Washington, D.C. where counterfeit Louis Vuitton merchandise is being sold, offered for sale, stored or

3

distributed:

        (a)      All merchandise bearing any copy or counterfeit of Plaintiff's Registered Trademarks, or any markings substantially indistinguishable therefrom;

        (b)      All labels, tags, logos, emblems, signs, and other forms of markings, all packaging, wrappers, pouches, containers and receptacles, and all advertisements, catalogs, price lists, guarantees, promotional materials and the like bearing any copy or counterfeit of the plaintiff's trademarks or any markings substantially indistinguishable therefrom, and all plates, molds, dies, tooling, machinery, assembly equipment and other means of making the same; and,

        (c)      All books and records showing:

        (i)      defendants' manufacture, receipt and sale of merchandise bearing the aforesaid trademarks either by reference to such trademarks or by style or code number or otherwise; and,

        (ii)      defendants' manufacture, receipt and sale of any labels, tags, logos, decals, emblems, signs, and other forms of markings, any packaging, wrappers, pouches, containers and receptacles, and any catalogs, price lists, guarantees, promotional materials and the like bearing the aforesaid trademarks, either by reference to such trademarks or by style or code number or otherwise; and it is further

        ORDERED that all such sequestered merchandise and materials shall be held by the United States Marshal if possible, or if not, shall be delivered to plaintiff's attorneys or an agent thereof as substitute custodians for the Court, pending further order of this Court; and it is further

        ORDERED that to the extent necessary to effect the seizure and sequestration Ordered hereinabove, the United States Marshal or law enforcement officer or member of the Tontine Group may use such force as may be reasonably necessary; and it is further

ORDERED that plaintiffs shall provide persons capable of determining whether or not an item is covered by the preceding paragraphs and the United States Marshal or other law enforcement officer, or the employee or agent of the Tontine Group shall follow his determination in the seizure; and it is further

ORDERED that plaintiff's agents shall promptly inspect the items seized, and if any items are found to be genuine products, such items are to be returned to defendants within seven (7) business days of the date this Order is executed; and it is further

ORDERED that defendants show cause before this Court at Courtroom _____, United States Courthouse, 3rd Street and Constitution Avenue, N.W., Washington, D.C., on the ___ day of _____, 2007 at _____ o'clock _____, or as soon thereafter as counsel can be heard, why an order should not be entered, pursuant to 15 U.S.C. 1116(d)(10)(A) confirming the seizure authorized herein; and it is further

ORDERED that while plaintiff's counsel or its agents may photocopy and review any books and records seized pursuant to this Order, they may not disclose any trade secrets or other confidential information contained in such books and records to plaintiff or any other person pending the hearing of plaintiff's motion to confirm the seizure authorized herein; and it is further

ORDERED that the search, seizure, and sequestration ordered hereinabove may be photographed and/or videotaped for the purpose of authenticating and assisting in the obtaining of evidence and to prevent subsequent controversy concerning the events occurring during such search, seizure and sequestration; and it is further

ORDERED that pursuant to 15 U.S.C. § 1116(d)(10)(B) and Rules 30 and 34 of the Federal Rules Of Civil Procedure, plaintiff be given expedited discovery of defendants with respect to the manufacture, receipt and sale of merchandise, containers, promotional materials and labels bearing plaintiff's trademarks including discovery of the source thereof, the creation of such trademarks, the quantity of goods bearing such

trademarks ordered in inventory and sold by defendants, and other matters relevant to this action and that such discovery shall take place no later than one (1) day prior to the show cause hearings scheduled herein at a date and time to be noticed by plaintiff in a Notice of Deposition; and it is further

ORDERED that plaintiff shall post one bond in a form approved by the Clerk of the Court, cash, or law office or certified check in the sum of $_____ by February ____, 2007 as security for the payment of such costs and damages as may be incurred or suffered by any party who is subsequently found to be wrongfully enjoined or restrained hereby, or as a result of a wrongful seizure or wrongfully attempted seizure; and it is further

ORDERED that personal service of the Summons and Complaint and of this Temporary Restraining Order, Seizure Order, and Order To Show Cause, together with copies of the papers in support thereof, may be made on defendants on or before _____ __, 2007 and that such service be deemed sufficient service; and it is further

ORDERED that answering papers, if any, be personally filed with this Court and personally served upon plaintiff's counsel, Powell Goldstein LLP, at their offices at 901 New York Ave., N.W., Third Floor, Washington, D.C. 20001, on or before _____, 2007 at _____ o'clock ____.

Defendants are hereby put on notice that failure to attend the show cause hearings scheduled herein shall result in the confirmation of the seizure authorized herein and the immediate issuance of the preliminary injunction, which shall be deemed to take effect immediately upon the expiration or dissolution of the temporary restraining order herein, and shall extend during the pendency of this suit the same injunctive relief previously granted by the temporary restraining order. Defendants are hereby further notified that they shall be deemed to have actual notice of the issuance and terms of such preliminary injunction, and that any act by them in violation of any of its terms may be considered and prosecuted as contempt of this Court.

ORDERED that the District Clerk shall issue Summons as to so many of the John Doe or XYZ

Company Defendants as the attorneys for plaintiff may request.

ORDERED that the plaintiff is given lease to amend the Complaint to provide for the complete identities of the John Doe or XYZ Company Defendants, once they have been ascertained.

The Court has granted the foregoing Temporary Restraining and Seizure Orders without prior written or oral notice to defendants for the reasons set forth below:

(a)    The entry of any order other than a seizure order without notice will not serve to adequately achieve the objectives underlying the Trademark Counterfeiting Act of 1984;

(b)    Plaintiff has not publicized its proposed seizure order;

(c)    Plaintiff has served the United States Attorney for this District, with appropriate notice of its application for a seizure order without notice pursuant to 15 U.S.C. § 1116(d)(2);

(d)    Plaintiff is likely to succeed in showing that defendants have used a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services;

(e)    Plaintiff will incur immediate and irreparable injury if this Court declines to grant a seizure order without notice;

(f)    The matters subject to said seizure order will be located at the premises of defendants;

(g)    The harm to plaintiff should this Court decline to grant plaintiff's motion for a seizure order without notice outweighs any harm which defendants may incur in the event this Court grants plaintiff's motion for a seizure order; and,

(h)    Defendants, or persons acting in concert with them, would likely destroy, move, hide or otherwise make inaccessible to the Court the matters which are subject to the proposed seizure order if plaintiff is required to proceed on notice.

SO ORDERED.

_____
JUDGE; UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

Dated:  Washington, D.C.

February __, 2007

ISSUED: _____ _.m.

::ODMA\PCDOCS\WSH\413134\1

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

LOUIS VUITTON MALLETIER  )
19 East 57th Street     )
New York, New York 10022,  )
           )
    Plaintiff,   ) Case No.:
           )
  vs.       )
           )
VARIOUS JOHN DOES NOS. 1-300, and )
XYZ COMPANIES NOS. 1-20,  )
           )
    Defendants.  )
           )

## DECLARATION OF IVAN J. SNYDER

Ivan J. Snyder, under penalty of perjury, declares that:

1. I am an associate with the firm of Powell Goldstein LLP, 901 New York Avenue, N.W., Third Floor, Washington, D.C. 20001, attorneys for plaintiff in this action. I am submitting this declaration in support of plaintiff Louis Vuitton Malletier's (hereinafter referred to as "Louis Vuitton") motion for temporary restraining and seizure orders, preliminary injunction and expedited discovery.

2. Recently, it came to Louis Vuitton's attention that handbags, luggage, and related accessories bearing counterfeits and infringements of Louis Vuitton's trademarks were being distributed by numerous street vendors and itinerant shop keepers in Washington, D.C. Investigation of said defendants was commenced by a private investigator, whose declaration is submitted herewith.

3. In situations of clear infringement and counterfeiting, as in this instance, a plaintiff can seldom secure meaningful relief since the infringing merchandise soon disappears and the true source of such merchandise often is never discovered. Even a short amount of time (as little as twelve hours) between service of a notice of temporary restraining order or preliminary injunction hearings and the actual conduct of such hearing typically results in the unavailability of records

relating to acquisition or disposition of counterfeit and/or infringing merchandise and the concomitant absence of most of the counterfeit and/or infringing merchandise itself. Our firm's experience in this area closely parallels the factual situation related in In re Vuitton et Fils, S.A., reported at 606 F.2d 1 (2d Cir. 1979).

4.    In the last several years, Louis Vuitton -- together with manufacturers of other high quality goods -- has been the victim of an unparalleled wave of counterfeiting. This trafficking in counterfeit Louis Vuitton merchandise constitutes a most serious problem for Louis Vuitton, as the manufacture, offering for sale and sale of counterfeit, infringing goods by numerous unscrupulous entities greatly damages Louis Vuitton and its reputation for quality, both in the trade and with the purchasing public.

5.    The activities of the defendants complained of in this action are not isolated incidents. Instead, counterfeit Louis Vuitton handbags, luggage, and related accessories are being distributed and sold throughout the United States.

6.    In order to protect its good name and to stop this fraud on the consuming public, Louis Vuitton has been involved in other lawsuits throughout the United States to stop the selling of counterfeit Louis Vuitton merchandise.

7.    In appropriate cases like this, trademark holders have sought, and numerous courts have granted, temporary restraining and seizure orders without notice in order to remove the opportunity for defendants to dispose of any counterfeit and/or infringing merchandise currently being held by them. As a result, the trademark holders have been able to maintain the status quo with respect to the defendants' inventories of counterfeit merchandise. Absent such orders, counterfeiters invariably conceal or transfer their merchandise when they realize that they are about to be apprehended. It is equally important for Louis Vuitton to seize any records that exist relative to the acquisition and sale of such goods before they, too, "disappear."

2

8.    It is essential to the protection of Louis Vuitton's name and the interests of the consuming public that the path of the counterfeit Louis Vuitton merchandise network be traced to the source of the counterfeit handbags, luggage, and related accessories.  Unless this court grants an appropriate seizure order and temporary restraining order, it is my opinion that Louis Vuitton will not be able to trace successfully the path of the counterfeit Louis Vuitton merchandise distribution chain beyond the present defendants.

9.    The Trademark Counterfeiting Act of 1984 serves to underscore these conclusions. By imposing substantial criminal sanctions for the intentional distribution of counterfeit merchandise, Congress has effectively increased the likelihood that counterfeiters will attempt to conceal all evidence of their illegal enterprise.

10.    We are proceeding by Order to Show Cause in this action because, unless the sale of infringing Louis Vuitton merchandise is immediately stopped, Louis Vuitton will suffer immediate and irreparable injury to its reputation and the demand for its handbags, luggage, and related accessories bearing the Louis Vuitton trademarks will be lessened.

11.    In sum, the evidence offered by Louis Vuitton in support of this application clearly demonstrates that the issuance of a seizure order without notice is the only means of ensuring that additional evidence of defendants' counterfeiting activities will be obtained and preserved.

12.    For the foregoing reasons, it is submitted that this case presents those unusual circumstances which require the issuance of temporary restraining and seizure orders without notice.

13.    Pursuant to 15 U.S.C. § 1116(d)(2), the United States Attorney for this District has been informed by letter of Louis Vuitton's intent to seek an order without notice directing the seizure of defendants' counterfeit Louis Vuitton merchandise and all records relating thereto.  See letter attached hereto at Tab 1.

14.    Further, Louis Vuitton has not publicized this action, has not disclosed the names of defendants in this case and has not publicly revealed that this action is contemplated, as required by 15 U.S.C. § 1116(d)(4)(B)(ii).

15.    Expedited discovery of the defendants in this action, pursuant to 15 U.S.C. § 1116 and Rules 30 and 34 of the Federal Rules of Civil Procedure, is required by Louis Vuitton in order for it to determine the actual extent of defendants' use of the counterfeit and infringing trademarks. Further, in order to halt effectively distribution of counterfeit and infringing merchandise, it is vitally important for Louis Vuitton to determine with certainty the source of such merchandise, as well as the customers to whom defendants have sold the same and the volume of such purchases and sales. With such information in hand, Louis Vuitton can determine what further action is required and can best decide how to proceed in fully protecting its reputation and enforcing its rights.

16.    It is requested that Louis Vuitton be afforded preliminary injunctive relief and an order confirming the seizure order.

17.    A surety bond of approximately $20,000 is generally considered appropriate in these proceedings.

18.    No previous request for the relief sought herein has been made in this case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that all of the foregoing is true and correct.

Executed on February 2, 2007

Ivan J. Snyder

::ODMA\PCDOCS\WSH\412803\1



POWELL
GOLDSTEIN LLP

Atlanta  ■  Washington  ■  Dallas

RESIDENT IN WASHINGTON OFFICE
DIRECT DIAL: (202) 624 - 7239
ISNYDER@PGFM.COM

January 31, 2007

## VIA FEDERAL EXPRESS

Jeffrey A. Taylor, Esq.
United States Attorney
 for the District of Columbia
555 Fourth Street, N.W.
Washington, DC 20001

   Re: *Rolex Watch, U.S.A. v. Various John Does and XYZ Companies*
     *Louis Vuitton, N.A., Inc. v. Various John Does and XYZ Companies*
     *Oakley, Inc. v. Various John Does and XYZ Companies*
     *Tommy Hilfiger Licensing, Inc. v. Various John Does and XYZ Companies*
     *Burberry Limited v. Various John Does and XYZ Companies*

Dear Mr. Taylor:

  This firm is counsel to Rolex Watch, U.S.A., Louis Vuitton Malletier., Oakley, Inc., and Tommy Hilfiger Licensing, Inc. (collectively, the "Trademark Holders"). The Trademark Holders investigate and bring civil actions against counterfeiters of their trademarks.

  The Trademark Holders have been made aware that certain individual vendors and/or commercial entities have for some time engaged in offering for sale and the sale, in the District of Columbia, of clothing, shoes, watches, eyeglasses, sunglasses, handbags, luggage and related products falsely bearing copies of the trademarks owned by the Trademark Holders. The activities of these vendors and entities violate federal trademark laws, as well as state laws of unfair competition.

  We are writing to advise you that we propose to file actions in the United States District Court for the District of Columbia charging the vendors and entities with, *inter alia*, trademark infringement. In conjunction with the filing of these actions, we propose to seek an order pursuant to 15 U.S.C. §1116 allowing for the seizure and impoundment of these vendors and entities' infringing and counterfeit products bearing the Trademark Holders' Registered Trademarks and any records relating thereto.

COPY

Jeffrey A. Taylor, Esq.
January 31, 2007
Page 2

     Should you have any questions, comments or interest in participating in this application please do not hesitate to communicate with me. We are prepared to offer our complete cooperation to your office in connection with this matter.

Very truly yours,

Ivan J. Snyder

For Powell Goldstein LLP

cc:    Angelo E. P. Mazza

::ODMA\PCDOCS\WSH\412857\1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**
- - - - - - - - - - - - - - - - - X
                                  :
**LOUIS VUITTON N.A., INC.**      :
**19 East 57th Street**           :
**New York, New York  10022**     :
                                  :
                                  :
                 **Plaintiff,**   :
                                  :
                                  :    **CIVIL ACTION NO. 07-** _____
                                  :
                                  :
      **- vs -**                  :
                                  :
                                  :
**VARIOUS JOHN DOE NOS. 1-300, and** :
**XYZ COMPANIES NOS. 1-20**       :
                                  :
                 **Defendants.**  :
- - - - - - - - - - - - - - - - - X

## DECLARATION OF JACK V. SMALLEY

1.    My name is Jack Smalley. I am over the age of eighteen years, and I have personal knowledge of the facts stated below.

2.    I am employed by The Tontine Group as its Operations Chief. I have been in that position since 1994.

3.    As Operations Chief, my duties include identifying counterfeit merchandise on behalf of The Tontine Group's clients including plaintiff, Louis Vuitton, N.A., Inc. ("Vuitton"). I am familiar with the Trademark Registrations owned and used by Vuitton on its merchandise and identified in the Complaint.

4. I have received training in the identification of counterfeit and genuine Vuitton merchandise from representatives of Vuitton and I have over nine years of experience in identifying counterfeit Vuitton merchandise sold or offered for sale by vendors and merchants in the District of Columbia.

5. I have testified before the United States District Court for the District of Columbia as an expert witness on the identification of counterfeit Vuitton merchandise.

6. I have examined an item, described below, that was purchased by Monica Cook of The Tontine Group and submitted to me in connection with Vuitton's ongoing investigations of counterfeit Vuitton merchandise currently being offered for sale in Washington, D.C.

7. Cook Purchase No. 1, which I carefully examined, is a purse bearing the Vuitton logo. After careful consideration, it is apparent to me that Cook Purchase No. 1 is inferior quality merchandise which, although utilizing the Vuitton trademarks, was not manufactured by Vuitton. Nonetheless, the appearance of Vuitton Purchase No.1 is such that a purchaser could very easily be misled by this product into thinking that he is buying or receiving genuine Vuitton merchandise.

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 31, 2007                              _____
       Washington, D.C.                                  Jack V. Smalley

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**
- - - - - - - - - - - - - - - - - X
                                    :
**LOUIS VUITTON N.A., INC.**        :
**19 East 57th Street**             :
**New York, New York  10022**       :
                                    :
                                    :
              **Plaintiff,**        :
                                    :
                                    :   **CIVIL ACTION NO. 07-  _____**
                                    :
                                    :
     **- vs -**                     :
                                    :
                                    :
**VARIOUS JOHN DOE NOS. 1-300, and**:
**XYZ COMPANIES NOS. 1-20**         :
                                    :
              **Defendants.**       :
- - - - - - - - - - - - - - - - - X

## DECLARATION OF JACK V. SMALLEY

1.   My name is Jack Smalley. I am over the age of eighteen years, and I have personal knowledge of the facts stated below.

2.   I am employed by The Tontine Group as its Operations Chief. I have been in that position since 1994.

3.   As Operations Chief, my duties include identifying counterfeit merchandise on behalf of The Tontine Group's clients including plaintiff, Louis Vuitton, N.A., Inc. ("Vuitton"). I am familiar with the Trademark Registrations owned and used by Vuitton on its merchandise and identified in the Complaint.

4. I have received training in the identification of counterfeit and genuine Vuitton merchandise from representatives of Vuitton and I have over nine years of experience in identifying counterfeit Vuitton merchandise sold or offered for sale by vendors and merchants in the District of Columbia.

5. I have testified before the United States District Court for the District of Columbia as an expert witness on the identification of counterfeit Vuitton merchandise.

6. I have examined an item, described below, that was purchased by Monica Cook of The Tontine Group and submitted to me in connection with Vuitton's ongoing investigations of counterfeit Vuitton merchandise currently being offered for sale in Washington, D.C.

7. Cook Purchase No. 1, which I carefully examined, is a purse bearing the Vuitton logo. After careful consideration, it is apparent to me that Cook Purchase No. 1 is inferior quality merchandise which, although utilizing the Vuitton trademarks, was not manufactured by Vuitton. Nonetheless, the appearance of Vuitton Purchase No.1 is such that a purchaser could very easily be misled by this product into thinking that he is buying or receiving genuine Vuitton merchandise.

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 31, 2007
      Washington, D.C.                          Jack V. Smalley